UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES R. SWARTZ, JR., et al., | ) | Case No. 1:12CV3112 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| MARK A. DiCARLO, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |
| | ) | REPORT AND |
| | ) | RECOMMENDATION |

McHARGH, Mag. J.

The plaintiffs James R. Swartz, Jr., Tonimarie Swartz, and Vilma Swartz (collectively, "the Swartzes," or "plaintiffs") originally filed this action in the Lake County (Ohio) Court of Common Pleas against defendant Mark A. Di Carlo ("Di Carlo"), alleging three claims:  (1) Defamation (libel); (2) Intentional infliction of emotional distress; and, (3) Invasion of privacy (false light).  (Doc. 1, exh. 1, complaint.)  The case was removed to this court by Di Carlo on Dec. 27, 2012.  (Doc. 1.)  At that same time, Di Carlo filed an Answer with counter-claims and cross-claims.  (Doc. 1.)  Certain counterclaims against the plaintiffs were subsequently dismissed.  (Doc. 58; see also doc. 26, 52.)

Di Carlo has filed an Amended Answer, with counterclaims.  (Doc. 59; see also doc. 60 (motion for leave); doc. 100 (granting, in part, and denying, in part, leave to amend).)  The second counterclaim against the plaintiffs is "intentional

inflction of emotional distress."  (Doc. 59, at 15-16, ¶ 30.)  The court has not previously addressed this counterclaim, because the plaintiffs had not attacked the claim in their earlier motion to dismiss.  (Doc. 58, at 2; doc. 52, at 2 n.1.)

The plaintiffs filed a Motion to Dismiss (doc. 54) the counterclaim for intentional inflction of emotional distress, on June 25, 2013.  At a March 31, 2014, telephone status conference, Plaintiffs requested that their pending motion to dismiss (doc. 54) be addressed, as to the relevant allegations in the Amended Answer.  Di Carlo had filed an opposition to the motion on Dec. 10, 2013.  (Doc. 83.) Plaintiffs argue that the court should not consider his opposition, because it was filed during the stay, and because it is untimely.  (Doc. 84.)

While it is true that, technically, Di Carlo's opposition could be considered untimely, at the same time, plaintiffs' motion to dismiss attacked Di Carlo's original Answer and Counterclaims, and not the amended answer.  In the interests of resolving the issues on the merits (or lack thereof), the court will consider both plaintiffs' motion (doc. 54) as well as Di Carlo's opposition (doc. 83), in the context of the counterclaim raised in Di Carlo's Amended Answer (doc. 59), rather than requiring the parties to re-brief the issues.

The court notes that, although Di Carlo is proceeding pro se in this action, he "does not qualify for the leniency awarded by the court to pro se parties because he is a practicing attorney admitted before the Federal Bar for the Southern District of Texas, the United States Court of Appeals, and the United States Supreme Court." (Doc. 58, at 2.)

## I.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Until fairly recently, the standard for a motion to dismiss for failure to state a claim upon which relief can be granted was that the motion establish, beyond a reasonable doubt, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wright v. Metrohealth Med. Ctr., 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996).  However, in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), the Supreme Court modified the standard, in particular the "no set of facts" phrase.

The Court's ruling in Twombly abrogated Conley, and moved away from the pure notice pleading standards that had previously been a hallmark of the Civil Rules.  The Twombly Court asserted:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Twombly, 550 U.S. at 555 (citations omitted).  See also Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009); Association of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007).  The Court protested that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Compare 5 Wright

3

& Miller, Federal Practice and Procedure, § 1216 (2004) ("Conspicuously absent from Federal Rule 8(a)(2) is the requirement found in the [earlier] codes that the pleader set forth the 'facts' constituting a 'cause of action'.") Justice Stevens, in dissent, characterized the decision as a "dramatic departure from settled procedural law." Twombly, 550 U.S. at 573 (Stevens, J, dissenting).

In Ashcroft v. Iqbal, the Court clarified that the new Twombly standard is not intended to be limited to complicated litigation, such as the antitrust conspiracy case in Twombly. Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Court asserted that the new pleading standards governing Rule 8(a) do not require "detailed factual allegations," however they do require "factual enhancement." Iqbal, 556 U.S. at 678. Only "a complaint that states a plausible claim for relief" will survive a motion to dismiss. Id. at 679.

The Court summarized its new "plausibility" standard as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. 554). See, e.g., Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (plausibility standard). In other words, when resolving a motion to dismiss, the court is now required to locate the allegations of

4

the complaint on a possibility – plausibility – probability continuum.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

The Supreme Court stated that "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  Twombly, 550 U.S. at 563 n.8.  The function of the court in ruling on such a motion is not to weigh the evidence, nor to appraise the credibility of witnesses.  Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).  Rather, the court is simply to determine "whether a complaint states a plausible claim for relief."  Iqbal, 556 U.S. at 679.

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural, and tests the sufficiency of the complaint.  Miller, 50 F.3d at 377.  The court must construe the complaint in the light most favorable to the plaintiff, and, for the purposes of this motion, accept all factual allegations as true.  Central States Pension Fund v. Mahoning Nat'l Bank, 112 F.3d 252, 255 (6th Cir. 1997).  However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

## II.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To survive a motion to dismiss of a claim alleging intentional infliction of emotional distress, the pleading must include allegations that:

5

(1) the defendant intended to cause emotional distress or knew or should have known that actions taken would result in severe emotional distress, (2) the defendant's conduct was so extreme and outrageous that it went beyond all bounds of decency and was such as to be considered utterly intolerable in a civilized community, (3) the defendant's actions proximately caused plaintiff's psychic suffering, and (4) the plaintiff suffered serious mental anguish of a nature that no reasonable man could be expected to endure.

Brown v. Ohio Dept. of Rehab. & Corr., No. 12AP–815, 2013 WL 5234304, at *2 (Ohio Ct. App. Sept. 17, 2013).

Under Ohio law, liability has been found for the intentional infliction of emotional distress "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Yeager v. Local Union 20, 6 Ohio St.3d 369, 375, 453 N.E.2d 666, 671 (1983); see also Marconi v. Savage, No. 99163, 2013 WL 4774506, at *6-*7 (Ohio Ct. App. Sept. 5, 2013) (only most extreme wrongs, which do gross violence to norms of civilized society, rise to level of outrageous conduct).  Put more simply, the tort of intentional infliction of emotional distress requires conduct so outrageous that it is utterly intolerable in a civilized community.  Baab v. AMR Servs. Corp., 811 F.Supp. 1246, 1270 (N.D. Ohio 1993).

Furthermore, an emotional distress claimant must demonstrate that the "extreme and outrageous conduct" caused the plaintiff  "serious emotional distress." Yeager, 6 Ohio St.3d at 369, 453 N.E.2d at 667 (syllabus); Hockenberry v. Village of Carrollton, 110 F.Supp.2d 597, 605 (N.D. Ohio 2000).  The Ohio Supreme Court has

6

defined "serious" emotional distress in the following manner:

> Serious emotional distress describes emotional injury which is both severe and debilitating.  Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.

Wright v. Metrohealth Med. Ctr., 58 F.3d 1130, 1139 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996) (quoting Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 317 (6th Cir.1989)).  "Liability for intentional infliction of emotional distress will be found only in the most extreme circumstances."  Rice v. Cuyahoga Cty. Dept. of Justice, 970 N.E.2d 470, 482 (Ohio Ct. App.  2005).

## III.  PLAINTIFFS' MOTION

The plaintiffs argue that Di Carlo's allegations fall short of the pleading requirements of Iqbal, because he has simply set forth the elements of an intentional infliction of emotional distress claim, and nothing more.  (Doc. 54, at 4 n.2.)  The plaintiffs assert that dismissal would be proper on this basis alone.

In the alternative, the plaintiffs' motion presumes that the intentional conduct at issue is based on "Di Carlo's belief that Plaintiffs withheld necessary food, water and medical care in order to bring about the death of his father."  (Doc. 54, at 4.)  The plaintiffs opine that the counterclaim sounds more in the mental anguish component of damages of the wrongful death statute.  (Doc. 54, at 5.)  They contend that Di Carlo is seeking compensation "for the grief associated with watching his father pass away."  (Doc. 54, at 5.)  Thus, because the wrongful death

7

counterclaim was dismissed, plaintiffs reason that the emotional distress counterclaim should be dismissed.  (Doc. 54, at 6.)

The court does not find plaintiffs' contentions, attempting to subsume Di Carlo's counterclaim for intentional infliction of emotional distress into an element of his dismissed wrongful death counterclaim, to be persuasive.  The court finds that it is clear from the amended answer that Di Carlo intends to allege an independent counterclaim for intentional infliction of emotional distress, which is available under Ohio law.  The question, then, is whether his allegations of that counterclaims are sufficient to survive the motion to dismiss.

The amended answer alleges a counterclaim against the plaintiffs for "intentional infliction of emotional distress."  (Doc. 59, at 15-16, ¶ 30.)  The counterclaim first simply alleges the elements of the claim as outlined above. (Doc. 59, at 16, ¶¶ 30A-D.)

The following factual allegations are relevant.  Di Carlo is a resident of Corpus Christi, Texas, and was apparently resident in Texas at the time his father (Henry M. Di Carlo) was hospitalized.  (Doc. 59, at 2, ¶ 1; and 8, ¶ 6.)  Vilma Swartz is a resident of Timberlake, Ohio, and was apparently resident in Ohio at the time of her brother Henry M. Di Carlo 's medical crisis which resulted in his hospitalization in Ohio.  (Doc. 59, at 3, ¶ 4.)  Henry M. Di Carlo appointed his sister Vilma as health care power of attorney[1] at that time.  (Doc. 59, at 8 ¶ 6; and 11, ¶

---

[1] Although the court bases its ruling on the allegations of Di Carlo's amended answer and counterclaims (doc. 59), the court notes that there is evidence in the

8

19.)

      Di Carlo alleges further that:

      1) Di Carlo was not notified by Aultman Hospital of his father's release; 2) Di Carlo was not consulted for the termination of food, water, and medical care by Aultman Hospital; and/or Emeritus Senior Living; and/or Vlima Swartz, James R. Swartz, and Tonimarie Swartz; 3) That Di Carlo believed and does believe that food, water, and medical care were kept from his father in order to benefit Vilma Swartz, James R. Swartz, and Tonimarie Swartz.

      F) Di Carlo has incurred severe emotional distress in watching his father die, and being deprived food and water and medical care, during his stay at Emeritus at Willoughby believing that it was for Vilma Swartz, James Swartz, and Toni Marie Swartz financial benefit, and forced to watch his slow death in front of those he believed were responsible at Emeritus of Willoughby; while knowing that it was caused by Emeritus, an alleged facility to take care of the aged; Aultman Hospital, a Hospital charged with the duties of taking care of people; Vilma Swartz, Henry M. Di Carlo's own primarily estranged sister; Tony Marie Swartz, a Pharmacist; and James Swartz; a licensed nurse, in the most cruel and inhumane manor [sic].

      G) This emotional distress was unnecessary in that Henry M. Di Carlo, Sr., according to medical records attached, was hallucinatory and belligerent and obviously incompetent. See Exhibit 6.1-6.5.

      * * * * * *

      Di Carlo has incurred severe emotional distress in watching his father die, and being deprived food and water and medical care, during his stay at Emeritus at Willoughby believing that it was for Vilma Swartz, James Swartz, and Toni Marie Swartz financial benefit, and forced to watch his slow death in front of those he believed were responsible at Emeritus of Willoughby; while knowing that it was caused by Emeritus, an alleged facility to take care of the aged; Aultman Hospital, a Hospital charged with the duties of taking care of people; Vilma Swartz, Henry M. Di Carlo's own primarily estranged sister;

---

record, provided by Di Carlo (doc. 59, DX 2), which would support a finding that Vilma Swartz had the decedent's health care power of attorney.

Tony Marie Swartz, a Pharmacist; and James Swartz; a licensed
nurse, in the most cruel and inhumane manor [sic].

(Doc. 59, at 16-17, 18.)

The plaintiffs argue that Di Carlo's allegations simply set forth the elements
of an intentional infliction of emotional distress claim, and nothing more.  (Doc. 54,
at 4 n.2.)  The court finds the factual allegations are more substantive than
characterized by the plaintiffs, but must analyze whether those factual allegations
sufficiently state a plausible claim for relief for intentional infliction of emotional
distress.

The vast majority of Di Carlo's response to plaintiffs' motion ventures into
the underlying issues in the case overall, as well as the probate contest in state
court, rather than defending the sufficiency of his contested counterclaim.  Di Carlo
attempts to introduce facts and evidence which he believes relevant, which arose
out of the probate case, as well as otherwise.  See generally doc. 83.  As an attorney,
Di Carlo should be aware of the fundamental distinctions between a motion to
dismiss and a motion for summary judgment.

What is before this court at this time is a motion to dismiss Di Carlo's
counterclaim against the plaintiffs for intentional infliction of emotional distress.
(Doc. 54.)  A motion to dismiss for failure to state a claim upon which relief can be
granted is procedural, and tests the sufficiency of the complaint.  Miller, 50 F.3d at
377.  The function of the court in this context is not to weigh the evidence, nor to
appraise the credibility of witnesses.  Miller , 50 F.3d at 377.  Rather, the court

10

simply determines whether the allegations of the complaint (here, more specifically, the counterclaim alleged in the amended answer) state "a plausible claim for relief." Iqbal, 556 U.S. at 679.

Thus, Vilma Swartz's testimony in the estate case (see, e.g., doc. 83, at 2, ¶3a) is irrelevant to the court's ruling on the motion to dismiss, which addresses the allegations of the counterclaim in the amended answer, and cannot be considered. Similarly, whether Di Carlo attempted to settle this case along with the state court estate case (see, e.g., doc. 83, at 5, ¶¶ 6-7) is irrelevant at this point.  Whether it was just that Di Carlo had to travel from Corpus Christi, Texas, to a court hearing in Cleveland, Ohio, on April 29, 2013 (doc. 83, at 12, ¶ 19.g.), is similarly irrelevant.

When Di Carlo does finally address the allegations of the counterclaim in his brief in opposition, he states that he "has not researched this issue, but believes that the actions of [plaintiffs and their counsel] were purposeful, . . . have caused and are causing the intentional infliction and/or negligent infliction of emotional distress to Mark Di Carlo." (Doc. 83, at 8, ¶ 11.)  It is somewhat disconcerting to read, in a 20-page brief in opposition (doc. 83) filed in December 2013, that defendant states that he has not yet researched the sole issue which is the basis of plaintiffs' motion to dismiss (doc. 54), which was filed in June 2013.

In any event, it is the sufficiency of his counterclaim in the amended answer which is at issue here, not the quality of his brief in opposition.  The court will simply point out that Di Carlo's brief in opposition sheds no light on the sufficiency of the pleading of his counterclaim.

Returning, then, to the counterclaim itself.  First, there must be an allegation that the plaintiffs " intended to cause emotional distress or knew or should have known that actions taken would result in severe emotional distress" to Di Carlo. Brown, 2013 WL 5234304, at *2.  As to this element, Di Carlo simply alleges that the plaintiffs "intentionally and/or recklessly caused severe emotional distress to Mark A. Di Carlo."  (Doc. 59, at 16.)  This verges on a simple recitation of the legal elements of the claim.  There is no other allegation that the plaintiffs' conduct was intended to cause severe emotional distress to Di Carlo, or that they knew or should have known that their actions would have such a result.  Indeed, Di Carlo seems to allege that the plaintiffs actions were motivated for their own benefit, rather than to injure him.  See, e.g., doc. 59, at 16 ("Di Carlo believed and does believe that food, water, and medical care were kept from his father in order to benefit Vilma Swartz, James R. Swartz, and Tonimarie Swartz.").

The second element is that the counterclaim must allege that the plaintiffs' "conduct was so extreme and outrageous that it went beyond all bounds of decency and was such as to be considered utterly intolerable in a civilized community." Brown, 2013 WL 5234304, at *2.  Again, Di Carlo first simply recites the legal elements of the claim.  See, e.g., doc. 59, at 16.  It is clear that Di Carlo was distressed that Vilma Swartz chose to exercise the power of health care attorney in the manner which she did, which apparently led to a denial of life-sustaining treatment.  Di Carlo states that he "incurred severe emotional distress in watching his father die, and being deprived [of] food and water and medical care . . . and

12

forced to watch his slow death . . ."  (Doc. 59, at 17.)

Regardless of whether it may be distressing to their loved ones, the Supreme Court has noted that "patients may refuse even lifesaving medical treatment."  See Vacco v. Quill, 521 U.S. 793, 796-797 (1997).  The Ohio statute concerning health care powers of attorney recognizes that a valid power of attorney may encompass the issue of when or whether life-sustaining measures are to be withheld.  See generally Ohio Rev. Code § 1337.12.  Whatever another individual's personal feelings or reservations concerning "do not resuscitate" orders, and similar medical dilemmas, the law recognizes that the patient has the right and authority to legally designate another to make that choice for the patient, in certain defined circumstances.  Di Carlo presents no precedent holding that a person holding a valid health care power of attorney may be liable for intentional infliction of emotional distress by exercising such power, which may distress loved ones who disagree with the decision.  The court cannot find that Vilma Swartz's exercise of the health care power of attorney was so extreme and outrageous that it went beyond all bounds of decency, as to be considered utterly intolerable in a civilized community.

The third element is whether the plaintiffs' actions proximately caused Di Carlo's psychic suffering.  Brown, 2013 WL 5234304, at *2.  Di Carlo alleged that he "incurred severe emotional distress in watching his father die, and being deprived food and water and medical care, . . . and forced to watch his slow death" through the actions and medical choices of Vilma Swartz and the other plaintiffs.  (Doc. 59,

13

at 17.)  The court finds that this element of the counterclaim has been sufficiently pled.

The fourth element is that Di Carlo "suffered serious mental anguish of a nature that no reasonable man could be expected to endure."  Brown, 2013 WL 5234304, at *2.  In Paugh v. Hanks, the Supreme Court of Ohio described "serious emotional distress" as "emotional injury which is both severe and debilitating." Rice, 970 N.E.2d at 483 (quoting Paugh v. Hanks, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983).)  Examples of serious emotional distress would include "traumatically induced neurosis, psychosis, chronic depression, or phobia."  Rice, 970 N.E.2d at 483 (quoting Paugh).  Beyond noting his severe distress at watching his father die, at the time, Di Carlo does not allege a severe emotional injury.

The court finds that Di Carlo has failed to support his counterclaim for intentional infliction of emotional distress with allegations that would support a plausible claim for relief.  The allegations of his counterclaims only support one, or at most two, of the four elements of the emotional distress claim under Ohio law. The motion to dismiss (doc. 54) the counterclaim for intentional infliction of emotional distress should be GRANTED.

RECOMMENDATION

The motion to dismiss (doc. 54) the counterclaim for intentional infliction of emotional distress should be GRANTED.


Dated:   Apr. 11, 2014          /s/ Kenneth S. McHargh
                                Kenneth S. McHargh
                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

15