## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES SWARTZ, JR. ET AL.,** | ) | **CASE NO.1:12CV3112** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **MARK A. DICARLO,** | ) | **ORDER** |
| | ) | |
| **Defendant.** | ) | |

### CHRISTOPHER A. BOYKO, J:

This matter is before the Court on the Motions for Summary Judgment of Plaintiffs James Swartz, Toniemarie Swartz and Vilma Swartz (ECF # 157) and Defendant Mark DiCarlo (ECF # 164). For the following reasons, the Court denies both Motions for Summary Judgment.

This case involves the alleged defamation of Plaintiffs by Defendant Mark DiCarlo, arising from a family dispute over the care received by Henry DiCarlo (deceased), father of Mark and brother of Plaintiff Vilma Swartz ("Vilma") and uncle of James Swartz ("James") and Toniemarie Swartz ("Toniemarie"). There is also a dispute between the parties over Henry's estate presently pending in Lake County, Ohio Probate Court.

### FACTS

Henry DiCarlo was 85 years old in 2012 when he had a fall in his home in April of 2012.

Henry was hospitalized at Aultman Hospital.  After a brief period of hospitalization, Henry decided to move to an assisted living facility, Emeritus Senior Living Facility ("Emeritus").  On April 30, 2012, Henry was transferred to Emeritus.  That same day he executed a medical power of attorney naming his sister Vilma as his agent to make decisions concerning his healthcare.

On May 2, 2012, Henry's health declined rapidly.  James contacted Mark by phone, informing Mark of Henry's rapidly declining health.  After concluding his phone conversation with James, Mark drafted and faxed a letter to Emeritus notifying Emeritus that he had medical power of attorney over Henry and instructing Emeritus to either have a doctor exam Henry immediately or transfer Henry to a hospital.    In the letter, Mark disputed Henry's competence to make decisions regarding his healthcare and described Mark's belief that Vilma, Toniemarie and James Swartz were unduly influencing Henry in order to have him change his Will for their benefit.  Mark's letter continues "I do not desire him to die merely because he is depressed at this moment.  I am Catholic and I do not believe in euthanasia."   Later in the letter Mark writes "His transfer to a hospice without proper medical care is, in my opinion, is an attempt to cause his death in order to benefit VilmaSwartz, Toni Marie (sp) Swartz and Jim Swartz for their monetary benefit, in that they recently encouraged him to change his will.  Now they have arranged for his immediate death."  Mark further wrote, "I believe he was spirited away without my permission, his will was changed, and he has been sentenced to death for lack of medical care."

Henry passed away on May 9, 2012.  After Henry's death, Mark sent a second letter on July 13, 2012, to the Louis Stokes, Cleveland Veterans Administration Medical Center, Wade Park Campus and the national headquarters of the United States Department of Veterans Affairs.

2

In his July 13, 2012 letter, Mark wrote:

>     I am concerned about a sequence of events regarding my father Henry M.
> DiCarlo, Sr. an 85 year old man; A World War II Veteran; A man with severe
> emotional problems, with a ninth grade education, which I believe resulted in his
> unnecessary death and/or murder and/or euthanasia in an apparent attempt to
> secure his estate of approximately $800,000.00.
>
> I wanted to be certain that no other U.S. Veteran is euthanized and/or murdered and/or
> influenced to sign documents while physically and mentally incompetent and
> which leads to his death in suspicious circumstances, and that no one go through
> what I went through.

Mark's July 13 letter detailed his understanding of the events that resulted in his father's

death.  Mark relates in the letter that Henry fell in his home and as a result was hospitalized at

Aultman Hospital with minor injuries.  Mark spoke to his father while Henry was hospitalized at

Aultman.  Henry gave Vilma medical power of attorney on April 30, 2012 and, according to

Mark, changed his Will on May 1, 2012, giving Vilma, Tonimarie and James each 25% of his

estate.  Mark flew to Ohio on May 2, 2012, only to discover Henry had been transferred to

Emeritus.  His letter then reads, "I discovered at that point, by questioning, that my father was

not receiving medical attention and I therefore called the police and, wrote and faxed a letter to

Emeritus Nursing Home.  I believed that he was being allowed to die because he had changed

the

Will to give his entire estate to Vilma Swartz, James Swartz, and Toni Marie Swartz."  Mark

describes in his letter, "I believe it was the second day after seeing Vilma Swartz and her

children Tomi Marie (sp) Swartz and James Swartz engaged, in what I felt was a sadistic and

gleeful death watch over my poor father..."   Mark described how he had not seen the Plaintiffs

in thirty years due to an estrangement between Henry and Vilma.  He recounted how he tried to

convince Emeritus administrators, doctors and nurses that his father could not have been in his

right mind when he gave Vilma medical power of attorney but they would not help Mark

because "They relied on my father's recent medical power of attorney and my father's sister,

Vilma Swartz's insistence on my father's death to assure that Vilma Swartz would benefit

financially and her two

children, Vilma Swartz and Toni Marie Swartz."  He continued "I believe Vima (sp) Swartz,

James Swartz, and Toni Marie (sp) Swartz, effectively conned Aultman Hospital and Emeritus

Nursing Home, into believing that they were caring relatives when they were strangers to my

father, until relatively recently and were self          interested in assuring his death."  Mark

concluded his letter by writing "I have a social and moral obligation to make the Veterans

Administration aware of what occurred in order that employees of the VA not intentionally,

accidentally or

negligently harm veterans and their families."

Both James and Toniemarie are employed by the VA.  James is a Decision Review

Officer at the Cleveland Regional Office of the VA and Toniemarie is a pharmacist at the Louis

Stokes VA Medical Center.  Mark sent the July letter to the VA specifically because it was

James' and Toniemarie's employer.

Plaintiffs assert that Defendant's statements in both letters falsely accuses Plaintiffs of

unduly influencing Henry to change his Will to Mark's detriment and Plaintiffs' benefit.  Mark

further falsely accused Plaintiffs of withholding or causing to be withheld medical treatment

from Henry in order to hasten his demise by murder or euthanasia in order to benefit Plaintiffs

financially.  According to Plaintiffs, these false accusations have no basis in fact and Mark's

own deposition testimony reveals he made no effort to establish the truth of the accusations made

4

in his letters.  Mark admits writing and sending the letters.


## LAW AND ANALYIS

### Standard of Review

Summary Judgment should be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R.Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v Catrett,* 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. V. Espy,* 39 F. 3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but most come forward with some significant probative evidence to support its claim.  *Celotex,* 477 U.S. at 324; *Lansing dairy*, 39 F.3d at 1347.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v Gilley,* 385 F. 3d 683, 689-90 (6th Cir. 2003).  A fact

is only material if its resolution "might affect the outcome of the suit under governing law."
*Anderson*, 477 U.S. at 248.

The Court does not have the responsibility to search the record *sua sponte* for genuine
issues of material fact.  *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th Cir.
1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992).  The
burden falls upon the nonmoving party to "designate specific facts or evidence in dispute,"
*Anderson*, 477 U.S. at 249-50; and if the nonmoving party fails to make the necessary showing
on an element upon which it has the burden of proof, the moving party is entitled to summary
judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon
"whether the evidence presents a sufficient disagreement to require submission to a jury or
whether it is so one-sided that one party must prevail as a mater of law."  *Amway Distributors
Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477
U.S. at 251-52).

### **Arguments on Summary Judgment**

According to Plaintiffs, Mark's letters contained several false statements which were
defamatory per se.  The letters accused Plaintiffs each, by name, of committing criminal acts.
They were intended to injure James and Toniemarie specifically in their occupations as the July
letter was sent directly to their employer.  The letters were sent via fax and certified mail and no
privilege existed.  Mark sent the May 2 letter without any investigation of the truth as it was sent
within hours of Mark talking to James on the phone.  There is no evidence supporting any of the
accusations in the July letter.  There is no medical evidence that Henry died due to a lack of
water, food or medical care.  Mark never read Henry's medical records before sending the

6

letters.  Henry's medical power of attorney allows the withholding of life saving measures, including food and water upon the signature of two physicians that Henry's condition was terminal.  Mark never contacted law enforcement to investigate the circumstances surrounding Henry's death.  Mark also sent the July letter before he had obtained the results of an autopsy. The autopsy did not classify Henry's death as a homicide, yet even after obtaining the autopsy, Mark never retracted his statements.

Based on the above, Plaintiffs contend they are entitled to summary judgment that Mark's statements in his letters accusing Plaintiffs of unduly influencing Henry to change his Will to their benefit and giving Vilma medical power of attorney in order to cause Henry's death for their benefit are defamation per se.

According to Mark, Henry was 85 years old at the time of his death and had a long history of depression.  Henry was also suffering from Alzheimer's and mild cognitive impairment.   Mark contends Henry's condition was not serious until he was transferred from Aultman Hospital to Emeritus.  As evidence of Henry's good health, Mark points to the fact that Henry lived for seven days after he was allegedly deprived of food, water and medical care. Mark further argues that there is no evidence Emeritus was equipped to care for Henry's depression and cognitive impairments, including Alzheimer's.  Mark asserts he still believes his father was "murdered and/or euthanized and/or his death was unnecessary."  (Opposition brief pg. 5).

Mark's opposition to Plaintiffs' Motion for Summary Judgment is based on his arguments that the operative Complaint is deficient in that it failed to specifically identify the statements alleged to be defamatory, raises issues in the summary judgment that were not raised

7

in the Complaint, did not attach the letters at issue and do not address which statements Mark made that he knew or should have known were false.  Lastly, Mark asserts Plaintiffs failed to state the damages Plaintiffs suffered as a result of Mark's alleged defamation.

Mark asserts summary judgment for Plaintiffs must be denied and instead be granted him because the Complaint failed to give him fair notice of the alleged defamatory statements; his alleged defamatory statements were protected opinion statements and the letters were privileged communications.  Mark further asserts the statements he made were true.  He also contends both he and Henry were Catholics and his failure to act would have made him complicit, negligent and/or immoral given the facts surrounding his father's death.

Mark further asserts Plaintiffs' Motion fails to address his affirmative defenses, therefore, they are not entitled to summary judgment.

Mark moves to strike the affidavits of Plaintiffs as all are represented by the same counsel and all three contain nearly identical statements which Mark contends demonstrates collusion.

## Sufficiency of the Complaint

Plaintiffs' Complaint specifically describes the two letters containing the allegedly libelous statements.  It identifies the dates of the letters and described specifically to whom they were sent.  Plaintiffs did not attach the letters to the Complaint due to the egregious nature of the statements but the Complaint clearly alleged the nature and subject of the statements at issue and alleged they were false.  It describes with sufficient facts the defamatory statements, the publication of those statements, to whom they were published and in the form they were published and alleges they were false.  The Court finds the Complaint sufficiently asserted facts

8

supporting Plaintiffs' Defamation claims.

**Failure to Address Defendant's Affirmative Defenses**

Defendant asserts Plaintiffs' failure to move for summary judgment on his affirmative defenses defeats Plaintiffs' Motion for Summary Judgment.  In *Copeland v. Machulis,* 57 F.3d 476 (6th Cir.1995), the Sixth Circuit established the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478–79 (citations omitted).

A defendant asserting an affirmative defense bears the burden of proof on the affirmative defense.   "The party asserting an affirmative defense bears the burden of that proof at trial, and therefore a non-movant is required to point to specific facts raising a genuine issue for trial as to each element of the affirmative offense."  *Wells Fargo Bank, N.A. v. Favino,* No. 1:10 CV 571, 2011 WL 1256847, at *4 (N.D. Ohio Mar. 31, 2011).

Thus, it is not for Plaintiffs to offensively demonstrate the inapplicability of Defendant's affirmative defenses, rather, the burden is on Defendant to assert and prove the affirmative defense.  Therefore, Plaintiffs' failure to address Defendant's affirmative defenses in their Motion for Summary Judgment does not defeat their Motion.

**Public vs. Private Figure**

According to Defendant, Plaintiffs are public figures as employees of the Veterans Administration.  Whether or not an individual is a public or private figure matters is a critical

9

distinction because a heightened standard of proof applies to public figures as they must demonstrate actual malice in the publication of a defamatory statement whereas a private figure need only demonstrate negligence.

"There are four classifications for a plaintiff who alleges defamation: '(1) a private person; (2) a public official; (3) a public figure; and (4) a limited purpose public figure.' " *Ehrlich v. Kovack,* 135 F. Supp. 3d 638, 673 (N.D. Ohio 2015) quoting *Kassouf v. Cleveland Magazine City Magazines,* 142 Ohio App.3d 413, 421 (Ohio App. 11th Dist.2001). "The determination of whether or not a party is a public figure is a matter of law." *Ehrlich*, 135 F. Supp.3d at 673.

"A public figure is a person whose position or activities thrust them into the center of an important public controversy." *Id.* " A limited purpose public figure is one who becomes a public figure for a specific range of issues by being drawn into or voluntarily injecting himself into a specific public controversy." *Id.*

To determine whether a plaintiff is a public official, the Supreme Court has stated that,

[w]here a position in government has such apparent importance that the public has an independent interest in qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, ... the *New York Times* malice standards apply.

*Rosenblatt v. Baer*, 383 U.S. 75, 84, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966

Furthermore, "[t]he employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." *Id.* at 86, n. 13.

The Court finds Plaintiffs are not public officials or public figures. Defendant contends

that based on James and Toniemarie's status as employees of a public entity, the VA, they are public officials or public figures.  The Court disagrees.  James' position as a Decision Review Officer and Toniemarie's as a pharmacist do no fit the *Rosenblatt* definition of a position in the government of such apparent importance beyond that of a general public interest in the qualifications and performance of all government employees.

Nor are they limited public figures because they never injected themselves into a public controversy nor have they been drawn into the same.  This dispute involves a very private issue, the care decisions a family makes for a loved one at the end of life.  The decedent was a relative of all the parties and the dispute centers on their interest in his Will and in the decisions made for his care at the end of his life.  No public concern is indicated and the complained of activities have no relation to either James' or Toniemarie's occupations.  Thus, there is no public controversy and Plaintiffs are not public officials or public figures.

**Defamation and Opinion vs. Fact**

"To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was  defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement."  *Anthony List v. Driehaus,* 779 F.3d 628, 632–33 (6th Cir. 2015).  In Ohio, words are defamatory when the "statements reflect upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession." *Earp v. Kent State Univ.,* 2010–Ohio–5904, P12 (Ohio Ct.Cl.2010) (citing *Matikas v. Univ. of Dayton,* 152 Ohio App.3d 514, 788 N.E.2d 1108 (Ohio Ct.App.2003)).  *A United Food & Commercial Workers*,

11

835 F. Supp. 2d 421, 435 (N.D. Ohio 2011).

Defendant asserts each and every allegedly defamatory statement made by him in the May and July letters are protected opinion statements.  Each letter is replete with statements like "I believe," "in my opinion," "I felt" and "I am concerned."   According to Defendant, all these statements clearly support a finding that the letters evidence Defendant's protected opinion speech and no defamation claim may be maintained.  In order to address this issue, the Court must first consider what statements or writings are defamatory under Ohio law.

"Defamation falls into two categories, defamation *per quod* or *per se*.  In defamation *per quod,* a publication is merely capable of being interpreted as defamatory, and the plaintiff must allege and prove damages.  Defamation *per se* occurs if a statement, on its face, is defamatory.  Additionally, [w]hen a statement is defamatory *per se,* a plaintiff 'may maintain an action for [defamation] and recover damages, without pleading or proving special damages.  Damages are presumed."  *Kendel v. Local 17*, 835 F.Supp.2d 421, 433 (N.D. Ohio 2011) (Internal citations omitted).   "[I]t is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 6 Ohio St.3d 369, 372, 453 N.E.2d 666 (1983).  "A defamatory statement expressed in a writing, a picture, a sign, or an electronic broadcast is considered libel." *McPeek v. Leetonia Italian Am. Club*, 174 Ohio App. 3d 380, 384, 882 N.E.2d 450, 453 (Ohio App. 2007).  "A writing that accuses a person of committing a crime is libelous *per se*." *Gosden v. Louis,* 116 Ohio App. 3d 195, 207, 687 N.E.2d 481, 488 (1996)

Article 1, Section 11 of the Ohio Constitution guarantees every citizen the right to publish freely his or her sentiments on all subjects. *Wampler v. Higgins*, 93 Ohio St. 3d 111

12

(2001).  The Ohio Constitution provides an absolute privilege for expressions of opinion and requires the trial court to make a categorical determination in every defamation case as to whether an allegedly defamatory statement is a non-actionable statement of opinion or a statement of fact. *Id* at 119. *see also Vail v. Plain Dealer Publishing Co.*, 72 Ohio St. 3d 279, 281 (1995); *Scott v. News-Herald*, 25 Ohio St. 3d 243, 250 (1986).

When analyzing whether a statement is fact or opinion, the Court applies the totality of circumstances test.  This test requires the Court to analyze the following factors: 1) the specific language used; 2) whether the statement is verifiable; 3) the general context of the statement; and 4) the broader context in which the statement appears.  *Vail*, 72 Ohio St. 3d at 282 (citing *Scott v. News-Herald*, 25 Ohio St. 3d at 250); *Ferreri v. Plain Dealer Publishing Co.*, 142 Ohio App. 3d. 629 (2001).

"The specific language used must be reviewed, focusing on the common meaning ascribed to the words by an ordinary reader. [The Court] must determine whether a reasonable reader would view the words used to be language that normally conveys information of a factual nature or hype and opinion..." *Vail*, 72 Ohio St. 3d at 282.  "Furthermore, even if the Court were to consider the language used as conveying to the ordinary reader some implication of criminal conduct courts must 'examine the totality of the circumstances in order to determine whether a published statement constitutes an opinion protected by the Ohio Constitution.'"  *Santoli v. Vill. of Walton Hills*, No. 1:12CV1022, 2014 WL 1093093, at *7 (N.D. Ohio Mar. 18, 2014) quoting *Wampler*,  93 Ohio St.3d at 122.

Plaintiffs contend the following statements made by Defendant in the May 2 and July 13 letters constitute defamation.

13

**May 2, 2012:**

> "I believe that he is being unduly influenced by Vilma Swartz, Toni Marie [sic] Swartz, and Jim Swartz.";

> Plaintiffs "[h]ave in fact influenced him to change his will for their benefit.";

> "His transfer to a hospice without proper medical care is, in my opinion, Is [sic] an attempt to cause his death in order to benefit Vilma Swartz, Toni Marie [sic] Swartz and Jim Swartz for their monetary benefit, in that they recently encouraged him to change his will."

> "Now [Plaintiffs] have arranged for his immediate death."; and,

> "I believe he was spirited away without my permission, his will was changed, and he has been sentenced to death for lack of medical care."

(Exhibit 3).

**July 13, 2012:**

> "I am concerned about a sequence of events regarding my father Henry M. Di Carlo . . . which I believe resulted in his unnecessary death and/or murder and/or euthanasia in an apparent attempt to secure his estate of approximately $800,000.00[.]";

> "I wanted to be certain that no other U.S. Veteran is euthanized and/or murdered and/or influenced to sign documents . . . and which leads to his death in suspicious circumstances. . . .";

> "I believed that he was being allowed to die because he had changed the Will to give his entire estate to Vilma Swartz, James Swartz, and Toni Marie [sic] Swartz.";

> "[V]ilma Swartz and her children Toni Marie [sic] Swartz and James Swartz engaged, in what I felt was a sadistic and gleeful death watch[ed] over my poor father. . . .";

> "[V]ilma's insistence on my father's death to assure that Vilma Swartz would benefit financially and her two children, Vilma Swartz [sic] and Toni Marie [sic] Swartz.";
> and,

> "I believe Vilma Swartz, James Swartz, and Toni Marie [sic] Swartz, effectively

14

conned Aultman Hospital and Emeritus Nursing Home . . . and were self[-
]interested in assuring his death."

(Exhibit 4).

Defendant's letters are replete with terms like "I believe" and "in my opinion," which he

contends demonstrate protected opinion statements and not defamatory statements.   While true

that such statements are indicia of opinion statements, it does not render them opinion per se.  As

the United States Supreme Court stated in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19,

110 S. Ct. 2695, 2705–06, 111 L. Ed. 2d 1 (1990):

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of
> facts which lead to the conclusion that Jones told an untruth. Even if the speaker
> states the facts  upon which he bases his opinion, if those facts are either incorrect
> or incomplete, or if his assessment of them is erroneous, the statement may still
> imply a false assertion of fact.

Citing *Restatement (Second) of Torts*, § 566

In applying the above analysis, the Court considers each of allegedly defamatory

statements as follows:

In his May 2, 2012 letter to Emeritus, Defendant wrote:  "I believe that he is being

unduly influenced by Vilma Swartz, Toni Marie [sic] Swartz, and Jim Swartz.  They are aware

of the fact that (sic) had recently been hospitalized for emotional problems and have in fact

influenced him to change his will for their benefit."   Under the "specific language used" element

this language is neither hype nor opinion but implies knowledge of a fact, - i.e - that Plaintiffs

knew Henry was not mentally competent to make determinations on his health when Plaintiffs

exerted undue influence upon him in order to get Henry to change his Will naming Plaintiffs as

beneficiaries.  Defendant describes it as a fact that Henry was suffering emotional issues when

they had him change his Will.  Thus, the specific language, though couched in opinion terms, implies an assertion of fact.

Next, the Court must consider whether Defendant's statements are verifiable.  "We seek to determine whether the allegedly defamatory statements are objectively capable of proof or disproof, for a reader cannot rationally view an unverifiable statement as conveying actual facts." *Wampler* , 93 Ohio St. 3d at 129.  Under the "verifiable" element, Henry's emotional state can be determined from medical records and the testimony of witnesses.  Furthermore, it is a fact that Plaintiffs became beneficiaries under Henry's Will.

Finally, the general and broader context of the statements under elements three and four support a finding of actionable defamation.  The overall context of the letter concerns Defendant's attempts to obtain medical care for Henry, contrary to that authorized by Plaintiffs. In doing so, Defendant attempts to raise serious concerns in the minds of the readers about the Plaintiffs' motives in authorizing Henry's transfer to Emeritus.    In order to actually change the care and treatment of Henry, Defendant had to convince Emeritus employees that Plaintiffs did not have Henry's best interests at heart but rather had tangibly and verifiably selfish motives for doing so.  Nor are they the sort of statements that in the broader social context an ordinary reader would interpret as opinion as it does not fall into a genre of writing marking it unmistakably as opinion.  It is different than an article in a sports page where invective, cajoling or hyperbole are commonly used and assumed.  See *Id* at 131.   As such, the ordinary reader would find these are statements of a factual nature and not opinion.  Therefore, in light of the totality of the circumstances, the Court finds this statement actionable.

Next Plaintiffs assert the following statements in Defendant's May 2 letter were

16

actionable defamation.  Defendant  wrote, "His [Henry's] transfer to a hospice without proper medical care is, in my opinion, is [sic] an attempt to cause his death in order to benefit Vilma Swartz, Toni Marie [sic] Swartz and Jim Swartz for their monetary benefit, in that they recently encouraged him to change his will.  Now they [Plaintiffs] have arranged for his immediate death."

The specific language in this statement clearly implicates criminal conduct on the part of Plaintiffs in their dealings with Henry as it describes Plaintiffs' motive and intent to arrange for the death of Henry in order to benefit from it financially.   The statement may be verified again by review of Henry's Will, whether it was changed recently, and whether transfer to a hospice caused Henry's death may be established by the medical records and testimony of his treating physicians.

Again, the general context and broader contexts support these statements are actionable as they are offered to call into question Plaintiffs' motives for the medical care they authorized for Henry and were not published in a forum wherein opinion statements are presumed.   For all these reasons, the Court finds this statement actionable.

Lastly, for the above reasons, Defendant's statement that  "I believe he was spirited away without my permission, his will was changed, and he has been sentenced to death for lack of medical care" is actionable for the same reasons his prior statement was actionable defamation.

The Court next considers Defendant's July 13, 2012 letter to the VA.   To place this letter in context, Defendant testified on deposition that he wrote the letter to the VA in order that the VA be made aware that Henry was "treated reprehensibly by two people that work for the VA" (Di Carlo depo. Pg 187), and that the VA "may do an investigation and they may discipline

17

them." (*Id* at 189).  In his letter to the VA, which was not an entity involved in the care and

treatment of Henry immediately prior to his death, Mark wrote:

> "I am concerned about a sequence of events regarding my father Henry M. Di
> Carlo . . . which I believe resulted in his unnecessary death and/or murder and/or
> euthanasia in an apparent attempt to secure his estate of approximately
> $800,000.00[.]" I wanted to be certain that no other U.S. Veteran is euthanized
> and/or murdered and/or influenced to sign documents . . . and which leads to his
> death in suspicious circumstances. . . ."

> "I believed that he was being allowed to die because he had changed the Will to
> give his entire estate to Vilma Swartz, James Swartz, and Toni Marie [sic]
> Swartz.";

> "[V]ilma Swartz and her children Toni Marie [sic] Swartz and James Swartz
> engaged, in what I felt was a sadistic and gleeful death watch[ed] over my poor
> father. . . .";

> "[V]ilma's insistence on my father's death to assure that Vilma Swartz would
> benefit financially and her two children, Vilma Swartz [sic] and Toni Marie [sic]
> Swartz.";

>  and,

> "I believe Vilma Swartz, James Swartz, and Toni Marie [sic] Swartz, effectively
> conned Aultman Hospital and Emeritus Nursing Home . . . and were self[-
> ]interested in assuring his death."

With the exception of the statement about the Plaintiffs' sadistic and gleeful deathwatch,

which the Court finds a statement of opinion, all others are actionable.  First, the specific words

used by Defendant imply serious criminal conduct, including "murder," "euthanasia,"

"unnecessary death," "insistence on my father's death," "effectively conned" and "self-interested

in assuring his death" as all convey to the ordinary reader criminal or, at least, reprehensible,

conduct.  This supports a finding that the statements are actionable.

Again, much like the May 2 letter, only more strongly worded, these statements are verifiable in that the cause and circumstances surrounding Henry's death are subject to inquiry establishing the veracity of the statements. The cause of Henry's death and the circumstances surrounding the changing of his medical power of attorney and Will may all be established by medical records, eyewitness and treating physician testimony. Thus, they are actionable statements of fact.

The context of the letter is consistent throughout in that it repeatedly, as evidenced above, seeks to impugn the motives and actions of Plaintiffs and accuses them of serious wrongful conduct in causing Henry's death for their own personal financial gain. This also establishes actionable statements of fact.

Lastly, there is no broader social context applicable that would support a determination that Defendant's letter was opinion statements. It was a private letter to the employer of James and Toniemarie intended to produce an investigation of wrongful conduct. This supports a finding that the statements are actionable.

As stated above, Defendant's statement that he saw Plaintiffs engaged in what he felt was a sadistic and gleeful death watch over his father is a subjective opinion on the temperaments of Plaintiffs at his father's bedside that clearly exhibits Defendant's impressions of Plaintiffs' feelings. These emotions or attitudes are not verifiable and the specific words used describe Defendant's subjective reading of Plaintiffs' emotions and attitudes at his father's bedside and therefore, the Court finds it is not an actionable statement of fact but is instead a protected opinion statement.

**Privilege**

19

Defendant asserts that the letters involved privileged communications.  A privileged communication is:

> a communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.

*A & B Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 1995 Ohio 66, 73 Ohio St. 3d 1, 8, 651 N.E.2d 1283, 1290 (1995).

If a claimant establishes a *prima facie* case of defamation, then the opposing party may invoke a conditional or qualified privilege. *Leisure Sys., Inc. v. Roundup, LLC,* No. 1:11 CV 384, 2012 WL 5378302, at *24 (S.D. Ohio Oct. 31, 2012) citing *A & B Abell Elevators* at 7.

According to Defendant, he had a qualified privilege to communicate his concerns regarding his father's care because he believed he had medical power of attorney over his father.

"The elements necessary to establish privilege are * * * good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. " *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 244, 72 O.O.2d 134, 138-139, 331 N.E.2d 713, 719.  "Once defendant demonstrates the existence of the qualified privilege, plaintiff can prevail only upon a showing of actual malice."  *Hanly v. Riverside Methodist Hosp.,* 78 Ohio App. 3d 73, 81, 603 N.E.2d 1126, 1131 (1991).

"Defamatory statements are conditionally privileged if they pertain to or are motivated by the existence of some special relationship such as the family, lawyer-client, doctor-patient, or insurer-insured relationship.  It is generally accepted as appropriate and desirable that one will take steps to protect the interests of another with whom he shares such a relationship."  *Putka v. First Catholic Slovak Union,* 75 Ohio App. 3d 741, 752, 600 N.E.2d 797, 804 (1991)

Here, Defendant asserted a qualified privilege in his Answer, albeit under an inapplicable Revised Code Section, however, his Opposition Brief and Motion clearly described the nature of the qualified privilege and Plaintiff had the opportunity to challenge it.  Therefore, the Court finds Plaintiffs were not prejudiced by Defendant's citation to an inapplicable Revised Code Section and the matter is properly before the Court.

The Court finds that Defendant's May 2 letter to Emeritus was a privileged communication due to the family relationship between Mark and Henry and Henry's reasonable belief that he had medical power of attorney regarding Henry's care.  He sent a letter to a medical care provider regarding the care his father was receiving and questioned the motives of the Plaintiffs in managing Henry's care.  The letter was a proper means of communicating the message and was sent to Emeritus, the proper party responsible for Henry's care.  Thus, the May 2 letter was a privileged communication and Plaintiff must demonstrate actual malice.  "Actual malice," in this context, means "that the statement was made with knowledge that it was false or with reckless disregard of whether it was false."  *McPeek ,*174 Ohio App. 3d at 385.

However, as the Court discusses further in the opinion, there are issues of fact on the truth of the statements and Defendant is not entitled to summary judgment based on a qualified privilege.

The Court finds no privilege exists over the July 13 letter.  Unlike the May 2 letter, the July 13 letter was not sent to a proper party.   The VA is not a law enforcement body and Defendant's allegations of criminal conduct against Plaintiffs to the VA did not arise from a privileged relationship.  By this time, Defendant knew he did not have medical power of attorney and after his father's passing had no duty to report Plaintiffs' conduct.   Instead of reporting any alleged criminal conduct to the appropriate law enforcement agency, Defendant reported it to the VA in hopes Plaintiffs' James and Toniemarie would be investigated and disciplined by their employer.  The VA had no relation to Henry's care during the time of the incidents in question.  Thus, no privilege exists and Defendant's Motion for Summary Judgment based on qualified privilege of the July 13 letter is denied.

**Truth**

According to Defendant, each of his allegedly defamatory statements are true.  "Truth is an absolute defense against a claim of defamation." *Shifflet v. Thomson Newspapers* (Ohio), Inc. (1982), 69 Ohio St.2d 179, 183.  " In cases involving the defamation of private persons, an ordinary negligence standard is applied.  Private-person defamation plaintiffs must show by clear and convincing evidence that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication." *Fuchs v. Scripps Howard Broad. Co.*, 170 Ohio App. 3d 679, 692 (Ohio App. 2006) citing  *Lansdowne v. Beacon Journal Pub. Co.*, 32 Ohio St. 3d 176, 180(1987).

According to Plaintiffs, Defendant failed to take any action to establish the truth of his accusations before he published them to third parties.  Defendant's May 2 letter to Emeritus was sent within hours of Defendant's phone conversation with James wherein James informed

Defendant that Henry was dying.   The May 2 letter was sent without any prior investigation. Only after Defendant sent the letter did he contact law enforcement to intercede to prevent his father's death.  (Dicarlo depo. pg 109-110).   Defendant asserts that during the conversation James acted suspiciously, was reluctant to provide him details and it was only after asking him pointed questions did he discover that Henry was not being provided food and water or medical care.  (*Id* at 103-107).  Defendant  further recounts he suspected Plaintiffs of improper motives because there were many years of bad blood between Plaintiffs and Henry wherein they did not speak  *Id.*  Based on this information and James informing Defendant that Plaintiffs had brought a lawyer to Henry's facility, Defendant decided he needed to act immediately to save his father's life. (*Id*).  Defendant contacted the local police and an officer did visit Henry's room.  (*Id* at 107).

Given the short time frame and need to act quickly in order to attempt to save his father's life, the Court finds issues of fact prevent summary judgment on whether  Defendant acted reasonably to ascertain the truth of his accusations in the May 2 letter.  Therefore, the Court denies summary judgment on this issue on both motions.

Concerning the July 13 letter, Defendant was asked in his deposition what was his factual basis for the allegations.  He responded, " I -- the fact that my father's will was changed by Vilma Swartz's attorney, that he acted as a notary, that he went to the rest home, that she became the power of attorney, that he was deprived of food and water and medical care for approximately seven days. Those are the basic facts."  (DiCarlo depo. pg. 192-93).

Defendant further attests that the medical records and autopsy performed on his father indicate he was incompetent to sign legal documents at the time he changed his Will and granted

medical power of attorney to Vilma.  (*Id* at 197).  This evidence creates an issue of fact whether Henry was competent to change his Will and confer medical power of attorney upon Plaintiffs.

Concerning his allegations in the July 13 letter, contending that Plaintiffs' actions resulted in Henry's "unnecessary death and/or murder and/or euthansia,"  Defendant admitted the autopsy did not indicate Henry's death was due to a deprivation of food or water or medical care and was not classified as a homicide.  As Plaintiffs point out, the medical power of attorney signed by Henry granting Vilma the authority to make medical decisions for Henry required two physicians to confirm a terminal medical condition and make the determination that there was no reasonable possibility of regaining the ability to make decisions.  These two physicians must also be involved in the decision to withhold life-saving treatment.  Plaintiffs further point out that Defendant never attempted to have law enforcement investigate the circumstances surrounding Henry's death.

Given the heightened pleading standard in order to establish whether Defendant acted reasonably in attempting to establish the truth of his statements and in light of the law in this circuit that "whether a defamatory statement is substantially true is a question of fact,"  *Young v. Gannett Satellite Info. Network, Inc.*, 837 F. Supp. 2d 758, 764 (S.D. Ohio 2011), militates against summary judgment.

The truth of Defendant's statements is largely dependent on Henry's mental and medical state of from April - May 2012.  The parties dispute Henry's mental competence and physical state of health during this time period.  These are issues of fact for the trier of fact to determine as they will be dispositive of the truth of the statements made.

Lastly, the Court declines to strike affidavits/declarations of the parties.  The Court did

24

not consider any non-factual statements.  Furthermore, because the issue of whether Defendant's statements were libel per se is dependent on the truth of the statements, Plaintiffs were not required to proffer proof of damages.  However, even if they were, Plaintiffs affidavits set forth the requisite showing of injury to their reputations, fear of prosecution for the alleged criminal conduct and mental anguish sufficient to survive summary judgment on damages.

Therefore, for the foregoing reasons, the Court denies summary judgment on both Plaintiffs' and Defendant's Motions for Summary Judgment.

IT IS SO ORDERED.


 Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge