**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES SWARTZ, JR. ET AL.,** | ) | **CASE NO.1:12CV3112** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | |
| **MARK A. DI CARLO,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

On September 28, 2018, a jury found Defendant Mark A. DiCarlo liable for Defamation and awarded Plaintiffs damages in the amount of $150,000 in total compensatory damages and $100,000 in total punitive damages. On October 26, 2018, Defendant filed his Motion for New Trial, Motion for Judgment NOV, Motion for Judgment as a Matter of Law and Motion to Amend Judgment. (ECF # 256). For the following reasons, the Court denies Defendant's Motion.

Over the course of several years, the above-captioned case ultimately commenced with a jury trial on September 26, 2018, on one count of Defamation. On September 28, 2018, the jury returned a verdict for Plaintiffs and against Defendant and awarded Plaintiffs damages in the amount of $150,000 in total compensatory damages and $100,000 in total punitive damages. Defendant challenges the verdict based on a number of alleged errors which the Court now addresses.

According to Defendant, he was denied his right to procedural and substantive due process, the right to trial under the Seventh Amendment, the right to present evidence, the right

to know opposing evidence and the right to cross-examine witnesses. Defendant further contends that the Court denied him the right to introduce evidence at trial, including evidence that Defendant regularly visited his father. This evidence consisted of airline tickets to Ohio, receipts from his airline tickets, receipts for items purchased in Ohio and credit card statements for rental cars.

Defendant argues that the Court's Trial Order was confusing and denied him his due process rights insofar as the Trial Order to did not clearly indicate that exhibits for trial were in fact "proposed" exhibits for trial. Defendant further argues he was denied the right to introduce cell phone records that would have established his good relationship with his father and was denied the right to introduce his father's medical records. These records would have shown Defendant's father was tendered his Do Not Resuscitate Order and comfort care plan after his father threw a fit at Emeritus, the medical facility where his father was being treated. According to Defendant, it was only due to a "set of complex technicalities" that the Court resolved to exclude Defendant's proffered medical records evidence.

Defendant further contends the Court improperly excluded his evidence that Vilma Swartz was not on medications for two years after the alleged Defamation, which called into question her injuries resulting therefrom. Furthermore, Defendant contends the Court yelled at Defendant during his cross-examination of Vilma, creating substantial prejudice against Defendant in the eyes of the jury. Furthermore, the Court allowed Vilma to testify that she was afraid of Defendant, again causing substantial prejudice to Defendant.

Defendant also contends the Court committed error when it prevented Defendant from cross-examining all three Plaintiffs on their purported disabilities which went to damages and

credibility.

Defendant argues that Plaintiffs committed perjury when they testified they informed Defendant that his father's organs were shutting down, yet the Court did not allow Defendant to present to the jury his father's medical records which would have refuted Plaintiffs' testimony.

Defendant sought to put into evidence the response letter from the VA to Defendant's alleged defamatory letter. The VA letter was an admission that Plaintiffs lacked a cause of action for Defamation arising out of Defendant's letter to the VA. However, according to Defendant, the Court erroneously precluded Defendant from placing the VA letter into evidence.

Defendant further contends that issues concerning whether Plaintiffs were public figures and whether Defendant's defamatory statements were protected opinion statements were matters for the jury, not the Court to determine.

Defendant alleges the Court committed further error when it denied Defendant the opportunity to present the settlement document from the parties' dispute in Probate Court. According to Defendant, the document would have shown that Plaintiffs themselves believed Henry lacked testamentary capacity when he changed his Will.

Defendant argues the Court erroneously submitted the issue of punitive damages to the jury despite Plaintiffs' failure to establish Defendant's net worth, a condition precedent to awarding punitive damages under Ohio law. Furthermore, Defendant argues Plaintiffs never moved to bifurcate punitive damages from the liability portion of trial, which was also erroneous in that it was a failure to follow Ohio law.

Finally, Defendant objects to: the failure of Plaintiffs' former attorney to appear and give testimony despite his having been subpoenaed to appear, the failure of Plaintiffs' attorney to

3

timely move for attorney fees and the impropriety of Plaintiffs' counsels' motion for prejudgment interest on a punitive damages award.

Plaintiffs oppose Defendant's Motion because: Defendant offers no citation to the trial transcripts, seeks to overturn matters determined throughout the lengthy course of the litigation and were adjudged matters of law, not fact. According to Plaintiffs, many of Defendant's objections are based on Defendant's own failure to comply with the Federal Rules and the Court's Orders. Many of his arguments are difficult to understand and Plaintiffs are only able to speculate what Defendant is challenging. For example, according to Plaintiffs, Defendant contends the trial deprived him of his Fifth and Seventh Amendment rights. Yet, the Fifth Amendment applies primarily to criminal proceedings and the Seventh establishes a right to trial. Plaintiffs point out Defendant was not criminally charged and had a jury trial thus he was not deprived of either Constitutional right.

According to Plaintiffs, Defendant, as an experienced attorney, should understand that simply listing an exhibit on an exhibit list does not mean it is automatically admissible as evidence at trial as it would render the Rules of Evidence superfluous. Furthermore, the Court's Trial Order expressly states "counsel must have received a prior ruling of the court that the exhibits are admissible." There is no confusion that exhibits offered for trial must first be determined to be admissible.

According to Plaintiffs, many of Defendant's objections regarding his inability to offer documents into evidence stemmed not from Court orders, but rather Defendant's own failure to lay a proper foundation for use of the documents. Even though Defendant was not able to offer into evidence certain documents relating to the frequency of his visits with his father, he testified

to the frequency of his visits, therefore, the jury did hear evidence of the same.

Plaintiffs dispute that Defendant was denied the opportunity to present his father's medical records at trial. He was allowed ample opportunity to do so, yet it was Defendant's own failure to authenticate the records that ultimately precluded their introduction into evidence. Defendant had years to obtain the authentication and failed to do so. This issue was addressed previously in a ruling of the Court and there is no need to depart from that ruling.

While Defendant was unable to locate Vilma Swartz's prior deposition testimony during the trial, the information he sought to elicit from Vilma was rendered moot by the Court's questioning her. Defendant's own lack of preparation for cross-examination of Vilma was the cause of any perceived prejudice by the jury against him as a result of the tone and tenor of his questions to her.

Furthermore, Plaintiffs contend that Plaintiffs' disabilities were never presented as an issue in the trial and the fact had no bearing on the issues at trial.

According to Plaintiffs, any attacks on their credibility are simply attempts by Defendant to relitigate matters that were properly determined by the jury and are not a basis for a new trial. Furthermore, Defendant could have called witnesses from the healthcare providers for his father in order to support his version of events, yet he failed to do so. Therefore, any lack of supporting evidence was brought about by Defendant's trial strategy and not erroneous rulings by the Court.

## **LAW AND ANALYSIS**

**Standard of Review**

Fed. R. Civ. P. 59 provides the authority for a new trial and reads in pertinent part:

(a) In General.

(1) *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court;

"Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.,* the proceedings being influenced by prejudice or bias." *Holmes v. City of Massilon, Ohio,* 78 F.3d. 1041, 1045-46 (6th Cir. 1996), citing *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940). "The trial court should deny such a motion if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact." *Walker v. Bain,* 257 F.3d 660, 670 (6th Cir. 2001). On motions for new trial, the trial court may weigh the evidence. See *United States v. L.E. Cooke Co.,* 991 F.2d 336, 343 (6th Cir. 1993).

The Sixth Circuit has held:

[w]hen reviewing a motion for a new trial, a court should indulge all presumptions in favor of the validity of the jury's verdict. A court should refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous result. The simple fact that the grant of a new trial might result in a different outcome is not a valid basis for disturbing a jury's verdict which is otherwise based upon legally sufficient evidence.

*Brooks v. Toyotomi Co., Ltd.,* 86 F.3d 582, 588 (6th Cir.1996), *abrogation on other grounds recognized by United States v. Webb,* 157 F.3d 451, 452-53 (6th Cir.1998) ( *per curiam* ), *abrogated by Dillon v. United States,* 184 F.3d 556 (6th Cir.1999). The Sixth Circuit has further admonished courts "not to set aside the verdict simply because it believes that another outcome

is more justified." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007).[1]

In the alternative, Defendant asks the Court to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e). "Rule 59(e) motions serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has become available; or (3) because it is necessary to correct a clear error of law or preventing manifest injustice." *Boler Co. v. Watson & Chalin Mfg. Inc.*, 372 F. Supp.2d 1013, 1024-25 (N.D. Ohio 2004), quoting *General Truck Drivers, Local No. 957 v. Dayton Newspapers, Inc.*, 190 F.3d 434, 445 (6th Cir. 1999) (Clay, J. dissenting), *cert.denied*, 528 U.S. 1137 (2000).

**<u>Holdings</u>**

Defendant's Motion does not develop many arguments and makes simple assertions without explanation and without citation to the record, leaving Plaintiffs and the Court to speculate as to the nature of the objection. For those objections, the Court will address them as the Court interprets them.

---

[1] This Court is also mindful of the following admonition by the Sixth Circuit:

> Where no undesirable or pernicious element has occurred or been introduced into the trial and the trial judge nonetheless grants a new trial on the ground that the verdict was against the weight of the evidence, the trial judge in negating the jury's verdict has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts. It then becomes the duty of the appellate tribunal to exercise a closer degree of scrutiny and supervision than is the case where a new trial is granted because of some undesirable or pernicious influence obtruding into the trial. Such a close scrutiny is required in order to protect the litigants' right to jury trial. *Lee v. City of Columbus,* Ohio, No. 2:07CV1230, 2010 WL 1741335, 3 (S.D.Ohio, April 29,2010) quoting *Duncan v. Duncan,* 377 F.2d 49, 54 (6th Cir. 1967).

According to Defendant, the Court denied him procedural due process at trial, resulting in a violation of his Fifth and Fourteenth Amendment rights, and denied him his substantive due process right to a trial under the Seventh Amendment. The Court is unsure how Defendant's Seventh Amendment right to trial was violated when he was provided a jury trial and defended himself at that trial. Furthermore, the due process rights afforded a party under the Fifth and Fourteenth Amendments were provided Defendant. The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Comm. v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Defendant had the opportunity to be heard, to present evidence, confront witnesses and have his case tried to a jury of his peers. Thus, the Court finds his general assertions that he was deprived a Constitutional due process right are not supported by the record.

Defendant asserts he was denied the right to present certain documents at trial and that this deprivation severely hamstrung his ability to defend himself. In particular, Defendant argues the Court did not allow him to present evidence that he visited his father every two months. Defendant believes this evidence was important to support his assertion that Plaintiffs were "virtually strangers" to Defendant's father.

Defendant does not point the Court to any order or trial transcript page indicating when

8

he sought to introduce his travel records at trial nor has he pointed the Court to the reasoning behind its denial of the records. He only discusses that the Court's trial order was confusing as the Trial Order does not properly label proposed trial exhibits as "proposed" subject to a determination on authentication and admissibility. On that score, the Court's Trial Order could not have been clearer. It says at pg. 5 of the Civil Trial Order, "counsel must have received a prior ruling of the court that the exhibits are admissible." It was a point of serious concern for the Court that throughout the proceedings, Defendant lacked knowledge or understanding of many of the most basic rules of evidence and civil procedure even though he has been a practicing attorney for over thirty years, including experience as a trial attorney at the federal level. He was instructed repeatedly that any exhibit he sought to enter into evidence had to be properly authenticated and have been determined by the Court to be admissible. He failed to authenticate or even attempt to authenticate most of the records he sought to put into evidence or failed to lay any foundation for their introduction. Furthermore, despite having six years to prepare for his case, he often sought to introduce arguments and evidence outside the dates set by the Court. Thus, the Court finds the purported exclusion of his travel records does not warrant a new trial and was not the result of any erroneous decision by the Court but stemmed from Defendant's own failures to abide by the Rules of Evidence and Rules of Civil Procedure. Additionally, Defendant did have the opportunity and did present testimony at trial to the jury on the frequency of his visits with his father and questioned Plaintiffs on the nature of their relationship with his deceased father. Thus, Defendant was not prohibited from offering evidence on the disputed issue of the nature and extent of the parties' relationship with Henry DiCarlo.

Defendant contends the Court would not allow him to offer Henry DiCarlo's medical records to show Henry's medical condition and treatment up to the time of his death. This evidence was, according to Defendant, essential to his defense. In fact, the Court did not disallow the medical records but conditioned their introduction on Defendant's obtaining authentication. The Court determined it was the offering party's burden to authenticate medical records, yet Defendant never attempted to do so until the eve of trial. The Court further limited the introduction of medical records as neither party had expert testimony as required to establish Henry DiCarlo's medical diagnosis, the reason for his medical treatments or his mental capacity at a given time. No treating physician was called as a witness to discuss Henry's medical prognosis or condition. Thus, the purposes for which Defendant could have had the records put into evidence, had the records been properly authenticated, were limited. Regardless, Defendant failed to authenticate the medical records and there was no error by the Court as Defendant never fulfilled his obligation to do so.

Defendant further argues that the Court erroneously excluded evidence that Plaintiff Vilma Swartz, on deposition, testified that she was not on medication at the time of her deposition. The problem was Defendant was highly disorganized at trial and Defendant could not locate the relevant deposition during his cross-examination of Vilma. However, the Court questioned Vilma Swartz on the issue and, based on her answers in open court, the Court determined that further questioning on the subject was moot as she had answered the question whether she was on medication at the time of her deposition. When told to "move on" with his questioning of Vilma, Defendant proceeded without objection. Defendant was never able to locate the deposition page in order to impeach Vilma's trial testimony that she was on

medications for anxiety at the time of the deposition. Again, it was Defendant's lack of preparation, not the Court's ruling, that prohibited him from pursuing an impeachment argument against Vilma.

Without any citation to the record, Defendant contends the Court improperly stopped his cross-examination of Vilma Swartz and yelled at him, causing substantial prejudice to him in the eyes of the jury. Vilma Swartz was 87 years old at the time of her testimony at trial. After a lengthy period of time on cross-examination, Vilma looked to the Court and remarked that she couldn't "take any more. My medicine wore off." The Court gave Defendant an additional ten minutes to question Vilma in light of her age and medical condition and after inquiring whether she could continue if she took another dose of her medication. Therefore, the Court had good cause to limit the cross-examination of Vilma, and Defendant's alarming lack of preparation was the only thing preventing him from covering all the ground he wanted to cover in the cross-examination. Furthermore, Defendant has failed to point the Court to the relevant pages of the trial transcript that would support his argument that the Court "yelled" at Defendant or in anyway spoke to him from the bench such that the jury would be prejudiced against Defendant.

Vilma did testify at trial that she was afraid of Defendant, however, Defendant cross-examined her on the basis of her fear. Thus, the jury could consider whether Vilma's fear of Defendant was rational or not. Therefore, none of Defendant's objections concerning his cross-examination of Vilma warrants a new trial.

Defendant sought to question Plaintiffs about whether they received disability benefits. According to Defendant, this line of questioning was relevant to their credibility, damages and Plaintiffs' representations that Defendant's defamatory statements harmed their reputations and

11

professional standing. Defendant asserts the Court did not allow him to question Plaintiffs on their disability status, prejudicing his defense.

Plaintiffs acknowledged certain disabilities that they suffered from but did not testify that Defendant's defamation caused or exacerbated those conditions. As a result, the Court found the line of questioning irrelevant to the issue of whether Defendant defamed Plaintiffs and there was no prejudice to Defendant's defense.

Defendant attacks the credibility of the Plaintiffs insofar as they testified that Defendant was told his father's kidneys and internal organs were shutting down. He disputes this representation and alleges the jury verdict was tainted by this perjury and a new trial is warranted. As Plaintiffs point out, Defendant had the opportunity to cross-exam each Plaintiff regarding the representations, had the opportunity to call witnesses from Emeritus or Odyssey, or retain a medical expert to testify on Defendant's father's condition. Witness credibility is for the jury to determine and their verdict for Plaintiffs based on their belief in Plaintiffs' testimony does not warrant a new trial.

At trial, Plaintiffs argued that Defendant not only defamed them in the letters at issue but continued to defame them at trial by accusing them of causing the death of his father. According to Defendant, this prejudiced the jury against Defendant. Again, Defendant does not point the Court to anyplace in the record to support his allegation. Furthermore, he does not allege that the Court allowed Plaintiffs to assert continuing defamation over his objections. The jury was tasked with determining whether Defendant's accusations against Plaintiffs, found in two letters sent by Defendant to the VA and the medical facility where his father was a patient, were defamatory. Defendant provides no evidence from the trial record demonstrating the jury based

12

its verdict on anything other than on the statements in the letters at issue. Nor does he offer any evidence in the record demonstrating that the jury awarded greater damages for any further defamation.

Defendant based his defense on the arguments that the statements were opinion, that he was privileged to make the statements given his relationship with his father and that no cause of action existed per the VA regulations and correspondence. But these defenses were disposed of by the Court in its various summary judgment rulings and rulings on evidence. The Court sees no reason to depart from its prior holdings, including its determinations that the statements were actionable and not opinion, that the settlement document from probate court could not be offered as evidence in the defamation action, and that the VA letter to DiCarlo did not evidence he was authorized by law to make the defamatory statements in his letters. In light of the Court's rulings on these issues Defendant is not entitled to a new trial.

Defendant argues Plaintiffs' former counsel Stephen Komarjanski's failure to appear at trial despite being subpoenaed to appear requires a new trial. However, Defendant never sought Court intervention to enforce the subpoena or require his appearance.

Defendant contends the Court's failure to bifurcate the underlying claims from the punitive damages claim was error requiring a new trial. However, neither Plaintiffs nor Defendant requested bifurcation and the law does not impose a mandatory requirement on the Court to so bifurcate without a request by one or both parties. Therefore, Defendant cannot show that a single trial on liability, compensatory damages and punitive damages was improper.

Therefore, for the foregoing reasons, the Court denies Defendant's Motion for New Trial and Motion to Alter or Amend Judgment. Because the issues concerning whether punitive

13

damages and attorneys fees were properly awarded have been asserted in a separate motion, the Court will address those arguments in a further opinion.

    IT IS SO ORDERED.

                                        s/ Christopher A. Boyko
                                        CHRISTOPHER A. BOYKO
                                        United States District Judge

Dated: January 11, 2019